**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:23-cv-22219-RAR**

SIMPLE MINDS LIMITED,

      Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A,"

      Defendants.

**DECLARATION OF JOEL B. ROTHMAN IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ORDER RESTRAINING TRANSFER OF ASSETS**

I, Joel B. Rothman, declare and say:

    1.    I am an attorney for Plaintiff, SIMPLE MINDS LIMITED ("Simple Minds" or "Plaintiff") in the above captioned action.

    2.    I submit this Declaration in support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (the "Application for TRO") against Defendants, the individuals, partnerships and unincorporated associations identified on Schedule "A" to the Complaint in this action (the "Defendants").

    3.    I am personally knowledgeable of the matters set forth in this Declaration and, if called upon to do so, I could and would competently testify to the following facts set forth below.

4.	I am Board Certified in Intellectual Property by the Florida Bar and have been certified since 2010. I was Chair of the Intellectual Property Committee of the Business Law Section of the Florida Bar from 2009 to 2011. I obtained my law degree in 1991, with honors, from the Benjamin N. Cardozo School of Law, Yeshiva University, in New York.

5.	I have been licensed to practice law for thirty years. During that time, I have gained significant experience working with clients to protect their intellectual property rights. For example, I have represented clients in many intellectual property disputes, including those involving patent, trademark, and copyright infringement, as well as trade secret misappropriation.

6.	From 1994 to 1997 I served as an Assistant District Attorney in the Rackets Bureau, Investigations Division, of the Bronx County District Attorney's Office in New York State where, among other matters, I was responsible for counterfeiting cases in violation of New York trademark laws, including video piracy.

7.	With respect to trademark infringement and counterfeiting issues, there have been numerous studies conducted in recent years attempting to quantify the economic and social impact of counterfeit sales. For example, in one study put together by BASCAP and Frontier Economics, the domestic production and consumption of counterfeit goods was determined to total between $249-$456 billion in 2013 and was projected to grow to as much as $959 billion by 2022. See https://cdn.iccwbo.org/content/uploads/sites/3/2017/02/ICC-BASCAP-Frontier-report-2016.pdf. Further, counterfeit sales are anticipated to result in up to $1.2 trillion in lost sales globally by 2022, and up to 5.2 million in lost jobs by that date. Id. Moreover, it is well known that proceeds from counterfeit goods are often used to fund other criminal activity, as well as pose health risks to consumers because those goods are manufactured with no regulatory

controls. *Id.*

8. As indicated by those numbers, counterfeiters, and infringers, such as the Defendants to the above-captioned suit, target well-known brands to further their criminal enterprises. These parties have also, in recent years, taken full advantage of selling infringing goods through the Internet. For example, many counterfeiters and infringers operate exclusively through commercial internet stores listing goods for sale on marketplaces, such as Amazon.com, Bonanza.com, DHGate.com, eBay.com, Etsy.com, Wish.com, and others. Each of the commercial internet stores operated by the Defendants in this action are fully interactive, and they offer counterfeit goods for sale into the United States.

## INVESTIGATION OF DEFENDANTS

9. My firm, in cooperation with Plaintiff's Band Manager, whose Declaration accompanies mine ("Grenfell Decl."), investigated the suspected sales of counterfeit and infringing versions of Plaintiff's SIMPLE MINDS Mark on products by Defendants, and to obtain further information regarding payment accounts Defendants used for receipt of funds paid to Defendants for the sale of counterfeit and infringing products using the SIMPLE MINDS Mark.

10. At the conclusion of the investigation, I received the detailed web pages captured and downloaded, together with any photographs, reflecting each product using the SIMPLE MINDS Mark via the e-commerce stores operating under Defendants' seller identification names identified on Schedule "A" to the Complaint (the "Seller IDs").

11. True and correct copies of the web page captures provided to my firm reflecting samples of the products using the SIMPLE MINDS Mark that Defendants are promoting, offering for sale, and selling via the e-commerce stores operating under the Seller IDs are attached as Composite Exhibit 1 to the Declaration of Mr. Grenfell in support of Plaintiff's

3

Application for TRO.

## *EX PARTE* RELIEF

12. It has been my experience in multiple litigations involving online counterfeiting that, in the absence of a temporary restraining order without notice, defendants can and will significantly alter the *status quo* before the Court can determine the parties' respective rights.

13. In particular, the Internet based e-commerce stores at issue herein are under defendants' complete control and, as such, defendants have the ability to change the ownership or modify e-commerce store data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of Seller IDs.

14. The modifications by defendants can happen in a short span of time after defendants are provided with notice of this action, and if provided with notice defendants can easily electronically transfer and secret the funds sought to be restrained if they obtain advance notice of Plaintiff's Application for TRO and thereby thwart the Court's ability to grant meaningful relief and can completely erase the *status quo*.

15. As Defendants engage in illegal trademark counterfeiting, copyrights and patents infringing activities, Plaintiff has no reason to believe Defendants will make their assets available for recovery pursuant to an accounting of profits or will adhere to the authority of this Court any more than they have adhered to federal trademark, copyright and patent laws.

16. This case is being filed on an *ex parte* basis to prevent an injustice from occurring whereby Defendants transfer and secret funds and avoid accountability before this Court can restrain and enjoin them from doing so.

17. Further, recognizing their unlawful activity, counterfeiters and infringers, such as Defendants, do not disclose their locations or true identities. This is especially true for counterfeiters and infringers who sell infringing products through online marketplaces. For

example, for each of the marketplaces through which Defendants sell their products, they do not provide a physical address or phone number. Rather, they only provide an e-mail address for the purpose of communicating with the marketplace itself or the consumer. This makes it very easy for these entities to quickly shut down one listing and open another under a new name. It has been my experience, which I have further confirmed with extensive research, that these Defendants, in fact, simply register new online listings under new names when provided notice of a lawsuit.

18. Indeed, when counterfeiters and infringers, such as Defendants, receive notice of a lawsuit, they do not use that opportunity to appear in court to defend their actions. Rather, upon notification of legal action, counterfeiters and infringers take the opportunity to move assets and locations for the purpose of avoiding law enforcement. Counterfeiters and infringers will immediately move any financial assets out of accounts that may be subject to the court's jurisdiction, such as a PayPal account, and into accounts located either offshore or in China where they are not subject to a seizure order. These counterfeiters and infringers that operate commercial internet stores further shut down any store that is the subject of a lawsuit and open a new store under a different alias. As a result, if notice is provided to these Defendants before temporary injunctive relief is obtained and implemented, the Defendants will take unlawful steps for the purpose of avoiding legal action and rendering further prosecution of this action fruitless.

**RESTRAINT OF ASSETS**

19. Defendants use the following non-party internet marketplace platforms to support and drive consumer traffic to their counterfeiting and infringing operations: Amazon.com, DHGate.com, Bonanza.com, eBay.com, Etsy.com, Wish.com, and others. Defendants use these platforms to sell Counterfeit Products from foreign countries such as China to consumers in the United States. Defendants use Internet based e-commerce stores operating under their respective

5

seller identification names at these platforms operating Amazon.com, DHGate.com, Bonanza.com, eBay.com, Etsy.com, Wish.com, and others as identified on Schedule "A" to the Complaint (the "Seller IDs").

20. All of the marketplace platforms used by Defendants have "Terms of Service" agreements that sellers are required to abide by and agree to in connection with their selling activities on those platforms. I have reviewed all of the Terms of Service agreements applicable to these platforms that are published and available on Amazon.com, DHGate.com, Bonanza.com, eBay.com, Etsy.com, Wish.com, and others. All of these Terms of Service: a) require that sellers observe applicable laws and regulations applicable to the items they are selling, including all applicable laws and regulations in the countries they sell and ship products to; and standards regarding marking of products and any other labelling required by the law,"; and b) prohibit sellers from using the platforms at issue to infringe any third-party's copyright, patent, trademark, trade secret or other proprietary or intellectual property rights or rights of publicity or privacy in connection with their selling activities or the products they sell. All of the Terms of Service reserve rights to terminate sellers from their platform for violations of their Terms of Service such as intellectual property violations.

21. Each of these platforms handles payments and remittances differently. I either have experience dealing with each of these platforms and their payment processing methods, or I have investigated and identified their requirements and the manner in which payments are made, collected and remitted to sellers. As a result, I am familiar with the steps necessary to identify and restrain assets of the Defendants in the possession of the non-party internet marketplace platforms or the companies that they utilize to process and remit payments to Defendants.

22. Multiple past actions filed by other brand owners have demonstrated that

counterfeiters and infringers often do not identify the payment accounts they are using in attempts to evade detection.

23. Based on past experience in similar cases, I reasonably believe that the above-named entities have the ability to and will in fact comply with a Temporary Restraining Order of the type now sought by Plaintiff.

I declare under perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 23, 2023.

*/s/ Joel B. Rothman*
JOEL B. ROTHMAN
Florida Bar Number:  98220
joel.rothman@sriplaw.com