UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:23-cv-22219-RAR

SIMPLE MINDS LIMITED,

        Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A,"

        Defendants.

**DECLARATION OF IAN GRENFELL IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ORDER RESTRAINING TRANSFER OF ASSETS**

I, Ian Grenfell, declare and say:

1.    I am over 18 years of age, and I have personal knowledge of the facts set forth herein.

2.    I make this Declaration in support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (the "Application for TRO").

3.    If called upon to do so, I could and would competently testify to the following facts set forth below.

**BACKGROUND ON SIMPLE MINDS LIMITED**

4.    I am the Band Manager of Simple Minds Limited ("Simple Minds" or "Plaintiff").

5. Simple Minds is a Scottish rock band formed in Glasgow in 1977, best known for their single "Don't You (Forget About Me)", which featured on the film "The Breakfast Club" and reached no. 1 on the US Billboard charts. They have sold over 60 million albums worldwide, had five UK no. 1 albums, and have received numerous awards, including the Q Inspiration Award.

6. Plaintiff's products are sold through its own website, https://simplemindsshop.com/, and other authorized retailers.

7. Simple Minds is the exclusive licensee with all rights in and to the trademark described below that is the subject of this action.

8. Simple Minds offers for sale and sells its products within the state of Florida, including this district, and throughout the United States.

9. Like many other intellectual property rights owners and licensees, Simple Minds suffers ongoing daily and sustained violations of its licensed intellectual property rights at the hands of counterfeiters and infringers, such as Defendants herein.

10. Simple Minds is harmed, the consuming public is duped and confused, and the Defendants earn substantial profits in connection with the infringing conduct.

11. In order to combat the harm caused by the combined actions of Defendants and others engaging in similar infringing conduct, Simple Minds expends significant resources in connection with its intellectual property enforcement efforts, including legal fees and investigative fees.

12. The recent explosion of infringement over the Internet has created an environment that requires companies like Simple Minds to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the ill effects of

infringement of Plaintiff's licensed intellectual property rights, including consumer confusion and the erosion of Plaintiff's licensed brands.

## SIMPLE MINDS' TRADEMARK RIGHTS

13. Simple Minds creates and sells t-shirts, face masks, keychains, brochures, and other merchandise under the federally registered trademark SIMPLE MINDS.

14. Simple Minds is the owner of all rights in and to the SIMPLE MINDS Mark, U.S. Reg. No. 1,694,271 for clothing and printed matter and periodicals in International Classes 025 and 016, originally registered on June 16, 1992, and shown in **Exhibit 1 to the Complaint**, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "SIMPLE MINDS Mark").

15. The SIMPLE MINDS Mark is used in connection with the manufacture and distribution of Plaintiff's high-quality goods.

16. The SIMPLE MINDS Mark has been used in interstate commerce to identify and distinguish Plaintiff's high-quality goods for an extended period of time.

17. The SIMPLE MINDS Mark is a symbol of Plaintiff's quality goods, reputation and goodwill and has never been abandoned.

18. Simple Minds sells its products via authorized retailers and distributors on the world wide web, where it promotes and sells genuine products under the SIMPLE MINDS Mark to consumers.

19. Online sales of high-quality merchandise under the SIMPLE MINDS Mark represents a significant portion of Plaintiff's business.

20. The SIMPLE MINDS Mark is exclusive to Plaintiff and is displayed extensively on Plaintiff's products and in its marketing and promotional materials.

21. Plaintiff's products have been extensively promoted and advertised at great expense to Simple Minds.

22. SIMPLE MINDS Mark is distinctive when applied to Plaintiff's products, signifying to the purchaser that the products come from Simple Minds and are manufactured to its quality standards.

23. Whether Simple Minds manufactures the products itself or licenses others to do so, it has ensured that products bearing or using its trademark are manufactured to the highest quality standards.

24. The goodwill associated with the SIMPLE MINDS Mark is of incalculable and inestimable value.

25. Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the SIMPLE MINDS Mark in connection with Plaintiff's goods.

26. Simple Minds has extensively used, advertised, and promoted the SIMPLE MINDS Mark in the United States in association with the sale of high-quality goods.

27. As a result of Plaintiff's efforts, members of the consuming public readily identify merchandise bearing or sold under the SIMPLE MINDS Mark as being high-quality, sponsored and approved by Plaintiff.

28. Plaintiff has carefully monitored and policed the use of the SIMPLE MINDS Mark.

29. Genuine goods bearing the SIMPLE MINDS Mark are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet.

30. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to Plaintiff's overall marketing and consumer education efforts.

31. Thus, Plaintiff expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.

32. Plaintiff's SEO strategies allow Plaintiff and its authorized retailers and distributors to fairly and legitimately educate consumers about the value associated with Plaintiff's products and the goods marked with the SIMPLE MINDS Mark.

## DEFENDANTS' COUNTERFEITING AND INFRINGING ACTIVITIES

33. The overwhelming success of Plaintiff's merchandise has resulted in significant counterfeiting and infringement of the SIMPLE MINDS Mark by individuals and entities who unlawfully use the intellectual property and goodwill built by Simple Minds to sell knockoffs of the Plaintiff's products.

34. Simple Minds has an anticounterfeiting and anti-pirating program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers.

35. Simple Minds retained a third-party to investigate the promotion and sale of counterfeit and infringing products by Defendants to obtain payment account information for funds paid to Defendants for the sale of counterfeit and infringing products.

36. These investigations have established that Defendants are using the various webstores on platforms such as Amazon.com, Bonanza.com, DHGate.com, eBay.com, Etsy.com, Wish.com, and others to sell Counterfeit Products from foreign countries such as China to consumers in the United States.

37. Prior to signing this declaration, I or someone under my supervision accessed Defendants' Internet based e-commerce stores operating under their respective seller identification names through Amazon.com, Bonanza.com, DHGate.com, eBay.com, Etsy.com, Wish.com, and others as identified on Schedule "A" to the Complaint (the "Seller IDs").

38. The Seller IDs and associated payment accounts are a substantial part of the means by which Defendants further their scheme and cause harm to Simple Minds.

39. Upon accessing each of the e-commerce stores, I or someone under my supervision, was able to view counterfeit and infringing products using the SIMPLE MINDS Mark, add products to the online shopping cart, proceed to a point of checkout, and otherwise actively exchange data with each e-commerce store.

40. I, or someone under my supervision, captured detailed web pages for each Defendant reflecting each counterfeit or infringing product bearing or using counterfeits and infringements of the SIMPLE MINDS Mark. True and correct copies of the web pages captured and downloaded showing the counterfeit and infringing products are attached hereto as **Composite Exhibit 1**.

41. The SIMPLE MINDS Mark has been used by Plaintiff long prior in time to Defendants' use of copies of the intellectual property.

42. The SIMPLE MINDS Mark has never been assigned or licensed to any of the Defendants.

43. Defendants' individual seller stores using the SIMPLE MINDS Mark are indexed on search engines and compete directly with Plaintiff for space in search results.

44. The appearance of Defendants' individual seller stores in search engine results undermines Plaintiff's efforts to educate consumers about the value of products sold under SIMPLE MINDS Mark.

45. I, or someone under my supervision, personally analyzed each of the captured web pages and determined that Counterfeit Products were being offered for sale to residents of the United States. I, or someone under my supervision, further reviewed and visually inspected the detailed web page captures and photographs reflecting the Plaintiff-branded products and determined the products were not genuine versions of Plaintiff's goods. True and correct copies of the web pages captured and downloaded showing the counterfeit and infringing products are attached hereto as **Composite Exhibit 1.**

46. These web pages show Defendants slavishly copied the SIMPLE MINDS Mark and offer Defendants' Goods for sale under a similar or identical mark indistinguishable to consumers, both at the point of sale and post-sale.

47. I reached this conclusion through visual inspection of the products as they appeared on the Infringing Websites, the price at which the Counterfeit Products were offered for sale, other features commonly associated with websites selling counterfeit and infringing products, because Defendants offered shipping to the U.S., and because Defendants and the Infringing Websites do not conduct business with Plaintiff and do not have the right or authority to use the SIMPLE MINDS Mark for any reason.

48. Defendants falsely represent that their counterfeit and infringing goods are genuine, authentic, endorsed and authorized by Plaintiff.

49. Despite Defendants' lack of authority, they are promoting, advertising, distributing, selling and/or offering for sale, through their respective Seller IDs, goods bearing or

using counterfeits and infringements of the SIMPLE MINDS Mark without authorization ("Defendants' Goods") within the state of Florida, including this district and throughout the United States.

50. It is estimated that the Defendants are responsible for thousands of counterfeit and infringing products sold using the SIMPLE MINDS Mark.

51. Each sale made by the Defendants through a webstore results in a direct loss to Plaintiff.

**DEFENDANTS' COUNTERFEITING AND INFRINGING ACTIVITIES CAUSE IRREPARABLE HARM TO PLAINTIFF IN THE FORM OF PRICE EROSION, DAMAGE TO REPUTATION, AND LOSS OF GOOD WILL THAT ARE NOT COMPENSABLE BY DAMAGES ALONE**

52. As the illegal marketplace for Plaintiff's products grows on the Internet, the legitimate marketplace for authentic Plaintiff's products shrinks.

53. Monetary damages cannot adequately compensate Plaintiff for ongoing infringement because monetary damages fail to address the loss of control and damage to Plaintiff's reputation and goodwill.

54. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to our reputation and goodwill by acts of infringement.

55. Plaintiff's goodwill and reputation are irreparably damaged when the SIMPLE MINDS Mark is used on goods not authorized, produced or manufactured by Plaintiff.

56. Moreover, brand confidence is damaged, which can result in loss of future sales and market share.

57. Plaintiff is further irreparably harmed by the unauthorized use of the SIMPLE MINDS Mark because counterfeiters and infringers take away the ability to control the nature and quality of Counterfeit Products.

58. Loss of quality control over goods bearing or using the SIMPLE MINDS Mark and, in turn, loss of control over reputation, is neither calculable nor precisely compensable.

59. The sale of counterfeit and infringing products bearing or using the SIMPLE MINDS Mark is likely causing and will continue to cause consumer confusion that weakens the SIMPLE MINDS Mark's brand recognition and reputation.

60. Consumers who mistakenly believe that the Counterfeit Products he or she has purchased originated from Simple Minds will come to believe that Plaintiff offers low quality products.

61. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine Simple Minds products, resulting in a loss or undermining of Plaintiff's reputation and goodwill.

62. Indeed, there is damage to our reputation and goodwill even if a consumer knows that the goods he or she is purchasing are counterfeit because prospective consumers who see inferior Counterfeit Products used by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of Simple Minds' products. Such post-sale confusion results in further damage Simple Minds' reputation and correlates to a loss of unquantifiable future sales.

63. Simple Minds is further irreparably damaged due to a loss of exclusivity. Plaintiff's extensive marketing, creative and innovative designs are aimed at growing and sustaining sales. The SIMPLE MINDS Mark is distinctive and signifies to consumers that the

products exclusively originate from Plaintiff. When counterfeiters and infringers use the SIMPLE MINDS Mark on goods without authorization, the exclusivity of the Simple Minds' products, as well as Simple Minds' reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

64. Simple Minds will suffer immediate and irreparable injury, loss or damage if counterfeiters and infringers are allowed to continue to infringe upon the SIMPLE MINDS Mark.

65. Defendants have sold their infringing products in competition directly with Plaintiff's genuine products.

66. Plaintiff should not have any competition from Defendants because Plaintiff never authorized Defendants to use Plaintiff's licensed trademark.

67. Defendants sell their products that infringe Plaintiff's licensed intellectual property rights for much less than Plaintiff.

I declare under perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 22/6/2023

Ian Grenfell
Band Manager
Simple Minds Limited