UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-22219-RAR

**SIMPLE MINDS LIMITED**,

    Plaintiff,

v.

**THE INDIVIDUALS, PARTNERSHIPS,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A"**,

    Defendants.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT FINAL JUDGMENT

**THIS CAUSE** comes before the Court upon Plaintiff Simple Minds Limited's ("Simple Minds") Motion for Final Default Judgment ("Motion"), [ECF No. 47], filed on September 8, 2023. Plaintiff seeks an entry of default judgment against the Defendants numbered 2 to 15, 17 to 19, 22 to 25, and 27 to 71 ("Defaulting Defendants") listed on Exhibit 1 attached to Plaintiff's Motion, [ECF No. 47-1], that operate Internet based e-commerce stores that infringe Plaintiff's trademarks and promote and sell counterfeit goods bearing and/or using Plaintiff's trademarks. *See generally* Mot.

Plaintiff requests the Court: (1) enter final default judgment against Defaulting Defendants; (2) permanently enjoin Defaulting Defendants from infringing activities; (3) award Plaintiff damages for each Defaulting Defendant in the amount of $100,000; and (4) award Plaintiff its full costs and attorney's fees. Mot. at 15. On August 29, 2023, A Clerk's Default, [ECF No. 43], was entered against Defaulting Defendants after they failed to respond to the Complaint, [ECF No. 1],

despite having been served. *See* Proofs of Service [ECF No. 20, 22, 26].  The Court having considered the record and noting no opposition to Plaintiff's Motion, it is hereby

**ORDERED AND ADJUDGED** that the Motion, [ECF No. 47], is **GRANTED** for the reasons stated herein.  Pursuant to Rule 58 of the Federal Rules of Civil Procedure, a default final judgment will be entered by separate order.

## BACKGROUND[1]

### A. Factual Background

The following facts are admitted as a result of Defendant's default.  Plaintiff is the owner of all rights in and to the SIMPLE MINDS trademark, U.S. Reg. No. 1,694,271 for clothing and printed matter and periodicals in International Class 016, registered June 16, 1992, which Plaintiff states is valid and registered on the Principal Register of the United States Patent and Trademark Office ("SIMPLE MINDS Mark").  Mot. ¶ 1.

According to the Declaration of Ian Grenfell, Brand Manager of Simple Minds Limited ("Grenfell Declaration"), [ECF No. 9-2], and the Exhibit attached to it ("Grenfell Declaration Exhibit 1"), [ECF Nos. 9-3–9-4], Plaintiff sells its products via its own store, https://www.simplemindsshop.com/, as well as other authorized retailers, where it promotes and sells genuine Simple Minds Limited products to consumers.  Grenfell Decl. ¶¶ 6, 18.  Online sales of high-quality merchandise under the SIMPLE MINDS Mark represent a significant portion of Plaintiff's business.  *Id.* ¶ 19.  The SIMPLE MINDS Mark is exclusive to Simple Minds Limited and is displayed extensively on Plaintiff's products and in their marketing and promotional materials.  *Id.* ¶ 20.  Plaintiff states its products have been extensively promoted and advertised at

---

[1] The factual background is derived from Plaintiff's Complaint, [ECF No. 1]; Plaintiff's Motion for Entry of Final Default Judgment, [ECF No. 47]; and supporting evidentiary submissions, especially the Declaration of Ian Grenfell, [ECF No. 9-2] and its associated Exhibit 1, [ECF Nos. 9-3–9-4], as well as the Declaration of Joel Rothman, [ECF No. 9-1].

great expense. *Id*. ¶ 21. Plaintiff also states The SIMPLE MINDS Mark is a symbol of Plaintiff's quality goods, reputation and goodwill, and Plaintiff has never abandoned it. *Id.* ¶ 17. Plaintiff also claims to have expended substantial time, money and other resources developing, advertising and otherwise promoting the SIMPLE MINDS Mark. *Id*. ¶ 25. Finally, Plaintiff claims that genuine goods bearing the SIMPLE MINDS Mark are widely and legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet. *Id*. ¶ 29.

According to Plaintiff, the Defaulting Defendants' individual seller stores are unlawfully using the SIMPLE MINDS Mark, as shown in the web pages for each defendant reflecting each counterfeit or infringing product bearing counterfeits and infringements of the SIMPLE MINDS Mark. Grenfell Decl. ¶ 40; Grenfell Decl. Ex. 1. Moreover, the Defaulting Defendants' counterfeit products are being offered for sale to residents of the United States. Grenfell Decl. ¶ 45; Grenfell Decl. Ex. 1. In support of this claim, Plaintiff confirms that it reviewed and visually inspected the detailed web page captures and photographs reflecting the Plaintiff branded products and determined the products were not genuine versions of Plaintiff's goods. Grenfell Decl. ¶ 45. Plaintiff also confirms that Defaulting Defendants do not have, nor have they ever had, the right or authority to use the SIMPLE MINDS Mark for any purpose. Grenfell Decl. ¶ 49. Moreover, according to the Declaration of Joel Rothman, Counsel for Simple Minds Limited ("Rothman Declaration"), [ECF No. 9-1], despite their known lack of authority to do so, Defendants are promoting and otherwise advertising, distributing, selling and/or offering for sale, through their respective Seller IDs, goods bearing counterfeit and infringing trademarks that are exact copies of the SIMPLE MINDS Mark, without authorization. Rothman Decl. ¶ 15; Grenfell Decl. ¶¶ 45, 49.

To achieve this, Defaulting Defendants rely upon various webstores on platforms such as Amazon.com, Bonanza.com, DHGate.com, eBay.com, Etsy.com, Wish.com, and others to sell Counterfeit Products from foreign countries, such as China, to consumers in the United States. Grenfell Decl. ¶ 36.  To confirm Defaulting Defendants counterfeiting and infringing activity, Simple Minds accessed Defaulting Defendants' Internet-based e-commerce stores operating under their respective seller identification names through Amazon.com, Bonanza.com, DHGate.com, eBay.com, Etsy.com, and Wish.com.  Grenfell Decl. ¶ 37.  Simple Minds then identified the counterfeit products offered by Defaulting Defendants using the SIMPLE MINDS Mark, added products to the online shopping cart, proceeded to the point of checkout, and otherwise actively exchanged data with each e-commerce store.  Grenfell Decl. ¶ 39.  A representative for Simple Minds personally analyzed the Simple Minds Limited items wherein these orders were initiated— via reviewing the e-commerce stores operating under each of the Seller IDs and the detailed web page captures and images of the items bearing the SIMPLE MINDS Mark—and concluded that the products were not genuine.  Grenfell Decl. ¶ 45.[2]  Plaintiff estimates that the Defaulting Defendants are responsible for thousands of counterfeit products sold using the SIMPLE MINDS Mark, amounting to tens of thousands of dollars in lost profits in the past year alone.  Mot. ¶ 7; Grenfell Decl. ¶ 50.  Plaintiff alleges that each sale made by the Defendants through a webstore results in a direct loss to Simple Minds Limited.  Grenfell Decl. ¶ 51.

### B. Procedural Background

The following is a summary of the relevant procedural history. Plaintiff first filed its Complaint on June 15, 2023, alleging federal trademark counterfeiting and infringement under section 32 of the Lanham Act, 15 U.S.C. section 1114; false designation of origin pursuant to

---

[2] Evidence of each Defendant's infringement was attached as Exhibit 1 to the Declaration of Ian Grenfell.  *See* [ECF Nos. 9-2–9-4].

section 43(a) of the Lanham Act, 15 U.S.C. section 1125(a); common law unfair competition; and common law trademark infringement pursuant to 15 U.S.C. sections 1114 and 1125(a) and Florida common law.  *See generally* Compl.

Plaintiff initially proceeded under seal and pseudonym so as avoid alerting Defaulting Defendants of its pending suit and thereby prevent Defaulting Defendants from concealing any ongoing counterfeiting and infringement.  *See* [ECF Nos. 4–7].  On June 23, 2023, Plaintiff filed a Sealed Motion for Temporary Restraining Order ("TRO"), Preliminary Injunction, and Order Restraining Transfer of Assets, [ECF No. 9].  On June 29, 2023, this Court granted the TRO, [ECF No. 11], at first under seal.  This Court later unsealed the TRO on July 31, 2023, [ECF No. 24].

Between July 24, 2023 – July 31, 2023, each of the Defaulting Defendants listed in Schedule "A" to the Complaint numbered 2 to 15, 17 to 19, 22 to 25, and 27 to 71[3] were served with a copy of the Complaint and Summons.  *See* Proofs of Service, [ECF Nos. 20, 22, 26].  On August 1, 2023, the Court held a properly noticed hearing concerning Plaintiff's still-pending Motion for Preliminary Injunction, [ECF No. 31], at which none of the Defendants appeared.  Next, in an August 8, 2023 Order, this Court granted Plaintiff's pending Motion for Preliminary Injunction, [ECF No. 9], enjoining Defendants from producing or selling goods that infringe its trademarks and restraining funds in payment accounts associated with Defendants.  *See generally* [ECF No. 31].  In the same order, this Court noted that "Defendants have neither formally responded to the Motion, made any filings in this case, nor appeared in this matter either individually or through counsel."  *Id*. at 1.

Accordingly, in a Paperless Order entered on August 24, 2023, [ECF No. 40], this Court noted that all Defendants had been served as of July 31, 2023 and that pursuant to Federal Rule of

---

[3] *See* Exhibit 1 – Final Schedule A, [ECF No. 20-1].

Civil Procedure 12(a)(1)(A)(i), Defendants were required to file a response or answer to Plaintiff's Complaint by August 21, 2023. *See id*. Given that Defendants had failed to do so, this Court also directed Plaintiff to "file a status report advising the Court on whether a Clerk's Entry of Default as to all Defendants is appropriate. In the event Plaintiff advises all Defendants are in default, Plaintiff shall move for a Clerk's Entry of Default on the same day it files its status report." *Id*.

On August 29, 2023, Plaintiff timely filed the required status report, [ECF No. 41], and subsequently moved for a Clerk's Entry of Default, [ECF No. 42], which the Clerk of the Court entered on the same day, [ECF No. 43]. After the Clerk's Entry of Default, this Court then issued an Order Requiring Motion for Default Judgment, [ECF No. 44], in which the Court directed the Plaintiff to deliver a copy of the instant Motion to the Defaulting Defendants and to file Proof of Service indicating "that notice was sent and the address where notice was sent" within 10 days of the Order. [ECF No. 44] at 1–2. Plaintiff timely complied. *See* [ECF No. 46]. As directed, on September 8, 2023, Plaintiff filed the instant Motion now before the Court. [ECF No. 47].

## **LEGAL STANDARD**

A party may apply to the court for a default judgment when the defendant fails to timely respond to a pleading. FED. R. CIV. P. 55(b)(2). "A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (internal quotations omitted) (quoting *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1205 (5th Cir. 1975)). However, conclusions of law are to be determined by the court. *See Mierzwicki v. CAB Asset Mgmt. LLC*, No. 14-61998, 2014 WL 12488533, at *1 (S.D. Fla. Dec. 30, 2014). Therefore, a court may enter a default judgment only if there is a "sufficient basis to state a claim." *Id.*

Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004). Although an evidentiary hearing is generally required, the Court need not conduct such a hearing "when . . . additional evidence would be truly unnecessary to a fully informed determination of damages." *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746 (11th Cir. 2017) (quoting *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005)). Therefore, where the record adequately supports the award of damages, an evidentiary hearing is not required. *See Smyth*, 420 F.3d at 1232 n.13; *PetMed Express, Inc.*, 336 F. Supp. 2d at 1217 (finding an evidentiary hearing unnecessary because plaintiff was seeking statutory damages under the Lanham Act); *Luxottica Grp S.p.A. v. Casa Los Martinez Corp.*, No. 14-22859, 2014 WL 4948632, at *2 (S.D. Fla. Oct. 2, 2014) (same).

## ANALYSIS

### A. Claims

Plaintiff seeks a default judgment for the relief sought in the Complaint, asserting the following claims against Defendants: (1) trademark counterfeiting and infringement under section 32 of the Lanham Act, in violation of 15 U.S.C. section 1114 ("Claim 1"); (2) false designation of origin under section 43(a) of the Lanham Act, in violation of 15 U.S.C. section 1125(a) ("Claim 2"); (3) unfair competition under Florida common law ("Claim 3"); and (4) trademark infringement under Florida common law ("Claim 4"). *See* Compl. ¶¶ 113–146.

#### 1. Counterfeiting and Infringement

Section 32 of the Lanham Act, 15 U.S.C. section 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark . . . which . . . is likely

to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To prevail on its trademark infringement claim a plaintiff must demonstrate "(1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001).

### 2. False Designation of Origin

The test for liability for false designation of origin under 15 U.S.C. section 1125(a) is the same as for a trademark counterfeiting and infringement claim—*i.e.*, whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 780 (1992) (Stevens, J., concurring in the judgment).

### 3. Common Law Unfair Competition

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. *See Rolex Watch U.S.A., Inc. v. Forrester*, No. 83-8381, 1986 WL 15668, at *3–4 (S.D. Fla. Dec. 9, 1986) ("[I]t is clear that the Court need not find 'actual confusion' . . . . [t]he proper test is 'likelihood of confusion . . . .'").

### 4. Common Law Trademark Infringement

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under section 32(a) of the Lanham Act. *See PetMed Express, Inc.,* 336 F. Supp. 2d at 1217–18.

### B. Liability

The well-pleaded factual allegations of Plaintiff's Amended Complaint properly contain the elements for each of the above claims and are admitted by virtue of Defendants' defaults. *See*

Compl. ¶¶ 37–55, 84–112, 114–119, 123–131, 135-139, 142–145.  Moreover, the Complaint's factual allegations have been substantiated by sworn declarations and other evidence further establishing Defendants' liability for each of the claims asserted.  Accordingly, default judgment pursuant to Rule 55 is appropriately entered against Defendants.

### C. Relief

Plaintiff requests an award of equitable relief, monetary damages, costs, and fees against Defendants for trademark infringement and counterfeiting under Claim 1.  The Court analyzes Plaintiff's request for relief as to Claim 1 only, as the judgment for Claims 2, 3, and 4—false designation of origin, common law unfair competition, and common law trademark infringement, respectively—is limited to the damages, fees, and costs awarded as well as the requested equitable relief for Claim 1.  Mot. at 12–13.

#### 1. Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law.  15 U.S.C. § 1116(a).  Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10  (S.D. Fla. 1995) (alteration in original) (quoting *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)).  Injunctive relief is available even in the default judgment setting, *see, e.g.*, *PetMed Express, Inc.*, 336 F. Supp. 2d at 1222–23, because Defendants' failure to respond or otherwise appear makes it difficult for a plaintiff to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no

assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.").

Permanent injunctive relief is appropriate where a plaintiff demonstrates: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391–92 (2006). Plaintiff has carried its burden on each of the four factors.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . a substantial threat of irreparable harm." *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage [the plaintiff's] business reputation and decrease its legitimate sales."). Plaintiff's Complaint and its submissions show that the goods produced and sold by Defendants are nearly identical to Plaintiff's genuine products, and consumers viewing Defendants' counterfeit goods post-sale would actually confuse them for Plaintiff's genuine products. *See, e.g.*, Compl. ¶ 90 ("The net effect of defendants' actions is likely to cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe all of defendants' goods offered for sale on defendants' e-commerce stores are genuine goods originating from, associated with, and approved by Plaintiff.").

Plaintiff has no adequate remedy at law so long as Defendants continue to operate the Seller IDs because Plaintiff cannot control the quality of what appear to be its products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiff's reputation

and goodwill if Defendants' infringing and counterfeiting continue. Moreover, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks. Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products and potentially harmed by their inferior quality. *See Chanel, Inc. v. besumart.com,* 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior." (citation omitted)); *World Wrestling Entm't, Inc. v. Thomas*, No. 12-21018, 2012 WL 12874190, at *8 (S.D. Fla. Apr. 11, 2012) (considering the potential for harm based on exposure to potentially hazardous counterfeit merchandise in analyzing public's interest in an injunction).

Broad equity powers allow the Court to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g.*, *Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould [sic] each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co*., 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole."). District courts are expressly authorized to order the transfer or surrender of domain names in an *in rem* action against a domain name. *See* 15 U.S.C. §§ 1125(d)(1)(C), (d)(2). However, courts have not limited the remedy to that context. *See, e.g.*, *Philip Morris USA, Inc. v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 230 & n.2 (S.D.N.Y. 2004) (transferring Yesmoke.com domain name to plaintiff

despite the fact the plaintiff did not own a trademark in the term "Yesmoke" and noting 15 U.S.C. section 1125 "neither states nor implies that an *in rem* action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace"); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (ordering the defendants to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. section 1116(a)).

Defendants have created an Internet-based counterfeiting scheme in which they are profiting from their deliberate misappropriation of Plaintiff's rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities. Appropriate remedies to achieve this end include ordering the cancellation or transfer of the Seller IDs to Plaintiff, assigning all rights, title, and interest to the Seller IDs to Plaintiff, permanently delisting or deindexing the Seller IDs from any Internet search engine, removing the Seller IDs' listing and images of goods and requiring that the goods of each Defendant be surrendered to Plaintiff, and terminating the messaging services and/or email accounts used by Defendants such that these means may no longer be used as instrumentalities to further the sale of counterfeit goods.

    **2. Statutory Damages**

In a case involving the use of counterfeit marks in connection with the sale, offering for sale, or distribution of goods, 15 U.S.C. section 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. *See* 15 U.S.C. § 1117(c)(1). In addition, if the Court finds Defendants' counterfeiting actions were willful, it

may impose damages above the maximum limit up to $2,000,000.00 per counterfeit mark per type of good. *See* 15 U.S.C. § 1117(c)(2).

The Court has wide discretion to determine the amount of statutory damages warranted in cases such as this. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."); *Playboy Enters., Inc. v. Universal Tel-A-Talk, Inc.*, No. CIV. A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove defendants' profits or actual damages). The option of a statutory damages remedy in trademark counterfeiting cases is sensible given evidence of a defendant's profits in such cases is frequently almost impossible to ascertain. *See, e.g.*, S. Rep. No. 104-177, pt. V § 7, at 10 (1995) (discussing purposes of Lanham Act statutory damages); *PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (stating statutory damages are "[e]specially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

Here, the allegations of the Complaint and the evidence establish Defendants intentionally copied one or more of the SIMPLE MINDS Marks for the purpose of deriving the benefit of Plaintiff's reputation. Moreover, Defendants have defaulted on Plaintiff's allegations of willfulness. *See* Compl. ¶¶ 89, 99; *Arista Records, Inc. v. Beker Enters.*, Inc., 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (finding a court may infer willfulness from the defendants' default); *PetMed Express, Inc.*, 336 F. Supp. 2d at 1217 (stating that upon default, well pleaded allegations

are taken as true).  As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of good as statutory damages to ensure Defendants do not continue their intentional and willful counterfeiting activities.

The available evidence demonstrates that each Defendant promoted, distributed, advertised, offered for sale, and/or sold at least one (1) type of good bearing at least one (1) mark which is a counterfeit of one (1) of the SIMPLE MINDS Marks protected by federal trademark registrations.  *See generally* Compl.; Grenfell Decl. ¶¶ 14, 20 40, 45, 49, Ex. 1; Rothman Decl. ¶ 15.  Based on the above considerations, Plaintiff has asked the Court to award statutory damages in the amount of $100,000.00 against each Defaulting Defendant.  *See* Mot. at 11–13.  The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, to compensate Plaintiff, and to punish Defendants, all of which are stated goals of 15 U.S.C. section 1117(c).  The Court finds that this award of statutory damages falls within the permissible range under 15 U.S.C. section 1117(c) and is thus just.  Indeed, in cases similar to this one, courts in this district have routinely awarded far more in statutory damages.  *See Fendi S.R.L. v. Joe Bag*, No. 19-61356, 2019 WL 4693677 (S.D. Fla. Aug. 28, 2019) (awarding plaintiff $1,000,000.00 against each defendant); *Adidas AG v. Global Online Shopping*, No. 19-61180, 2019 WL 7708518 (S.D. Fla. Sept. 23, 2019) (awarding plaintiff $1,000,000.00 against each defendant); *Louis Vuitton Malletier v. lv2014.skrar*, No. 19-61015, 2019 WL 4731763 (S.D. Fla. Aug. 21, 2019) (awarding plaintiff $1,000,000.00 against each defendant); *Abercrombie & Fitch Trading Co. v. Artemis Gesdy*, No. 19-60287, 2019 WL 4693557 (S.D. Fla. July 10, 2019) (awarding plaintiff $1,000,000.00 against each defendant); *Goyard St Honore v. Agote*, No. 17-62276, 2018 WL 2006870 (S.D. Fla. Apr. 19, 2018) (awarding plaintiff $1,000,000.00 against each defendant).

### 3. Attorneys' Fees & Costs

Plaintiff also seeks an award of reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a)-(b). The Lanham Act, in relevant part, provides that a when there is "a violation under section 1125(a). . .the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). Moreover, when a violation under section 1125(a) is established, a court may also award attorney's fees "in exceptional cases." *Id*. Meanwhile, section 1117(b), which applies when the case involves willful use of counterfeit marks, *requires* the court to award reasonable attorneys' fees if the violation consists of "intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services." 15 U.S.C. § 1117(b)(1).

The Eleventh Circuit has defined an "exceptional case" under section 1117(a) of the Lanham Act to be "a case that stands out from others, either based on the strength of the litigating positions or the manner in which the case was litigated." *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018) (internal quotations omitted). *Tobinick* also confirmed that the "exceptional case" fee analysis under the Lanham Act is the same as that under an identically worded fees provision in the Patent Act, 35 U.S.C § 285. *Id*. Moreover, attorneys' fees are still available under section 1117(a) in exceptional cases, even for those plaintiffs who opt to receive statutory damages under section 1117(c), as Plaintiff has here. *See* 15 U.S.C. § 1117(a); *Int'l Watchman, Inc. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 22-24034, 2023 WL 4364027, at *6 (S.D. Fla. Mar. 23, 2023); *Frugality Inc. v. Individuals, Partnerships, & Unincorporated Associations Identified on Schedule "A"*, No. 21-23025, 2022 WL 686243, at *6

(S.D. Fla. Mar. 8, 2022) (citing *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 104–11 (2d Cir. 2012)).  Finally, "a case may be deemed 'exceptional' and merit an award of attorneys' fees under the Lanham Act when the defendant disregards legal proceedings and does not appear." *TracFone Wireless, Inc. v. Cabrera*, 883 F. Supp. 2d 1220, 1227 (S.D. Fla. 2012) (collecting cases).

Here, by virtue of Defendants' default, Plaintiff is the prevailing party in this action. Defaulting Defendants' willful infringement, disregard of these legal proceedings, and failure to defend or otherwise participate in this action has led to unjustified delays and forced the Plaintiff to incur increased costs and fees as a result.  Therefore, an award of costs and attorneys' fees to Plaintiff is appropriate.  Further, the allegations in the Complaint establish that Defendants are causing and "contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for [P]laintiff's genuine goods," and they are causing concurrent and indivisible harm to Plaintiff and the consuming public by "(i) depriving [P]laintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of [P]laintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the [SIMPLE MINDS] Mark, and (iii) increasing [P]laintiff's overall cost to market its goods and educate consumers via the Internet." Compl. ¶¶ 96–97 (alterations added).  These allegations support assessing Plaintiff's attorneys' fees and costs against Defendants jointly and severally.  *See*, *e.g.*, *Int'l Watchman, Inc.*, 2023 WL 4364027, at *7 (S.D. Fla. Mar. 23, 2023); *Frugality Inc.*, 2022 WL 686243, at *7 (entering attorneys' fee award against defendants jointly and severally even when the plaintiff made no allegations of joint and several liability with respect to damages under the Lanham Act).

Plaintiff requests this Court award $11,466.25, representing $10,897.25 in fees plus $569.00 in costs. *See* Mot. at 14. The Court finds that the cost figure and hourly rate calculation are reasonable, as established by the Declaration of Joel Rothman in Support of Plaintiff's Motion for Entry of Final Default Judgment, [ECF No. 47-2], as well as Exhibit 1 to the Rothman Declaration, [ECF No. 47-3]. The rate and overall amount are also reasonable for similar work performed by attorneys engaged in similar litigation. Accordingly, the Court finds that Plaintiff is entitled to reasonable attorneys' fees and costs in the amount of $11,466.25.

## CONCLUSION

For the foregoing reasons, Plaintiff is entitled to the entry of final default judgment. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion, [ECF No. 47], is **GRANTED**. Default final judgment and a permanent injunction shall be entered by separate order against the Defaulting Defendants numbered 2 to 15, 17 to 19, 22 to 25, and 27 to 71, as identified in Exhibit 1 and attached to Plaintiff's Motion, [ECF No. 47-1].

**DONE AND ORDERED** in Miami, Florida, this 19th day of September, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**